UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**DEC 26 2019**

JULIA C. DUDLEY, CLERK
BY: A. Beeson
DEPUTY CLERK

Jeramiah Chamberlain,
                    Plaintiff,

        v.                          Civil Action No.: 7:19CV879

Dr. T. Mathena          ,           CIVIL COMPLAINT
Dr. Kevin Fox           ,
Dr. Mark Amonette        ,
                  Defendant(s)

# I. JURISDICTION & VENUE

1.      This is a civil action authorized by 42 USCA §1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. Including violations of rights; and injuries pursuant to the Code of Virginia 1950 Title 8.01, §§ 8.01-195.1 et.seq. (Virginia Tort Claims Act); and § 8.01-581.1 et.seq. (Medical Malpractice); which, pursuant to 28 USCA §1367, gives this Court Supplemental Jurisdiction to hear the Claims arising from State law. This Court also has jurisdiction under 28 USCA §§ 1331 and 1343 (a)(3). Also, this action brings Claims which are protected by the Americans with Disabilities Act, per 42 USCA §12101 et.seq..

1

Plaintiff seeks declaratory relief per 28 USCA §§ 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 USCA §§ 2283 & 2284 and Rule 65 of the Fed. R. Civ. P. .

2.    The Western District of Virginia is an appropriate venue under 28 USCA § 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## II.  PLAINTIFF

3.    Plaintiff, Jeramiah Chamberlain, is and was at all times mentioned herein a prisoner of the Commonwealth of Virginia in the custody of the Virginia Department of Corrections. He is currently confined in Red Onion State Prison, in Pound Virginia, in the County of Wise.

## III.  DEFENDANTS

4.    Defendant, Doctor Mark Amonette is the Director of the Virginia Department of Corrections Health Services, located at Post Office Box 26963. Richmond, Virginia 23261. He is legally responsable for the overall operation of the health services in the Va. Dept. of Corr.s, and each institution under it's jurisdiction, including: River North Correctional Center (where injuries first occurred) and

Red Onion State Prison where Chamberlain is currently confined and still suffering injury and injustice.

5.  Doctor Kevin Fox, Defendant, is the regional health services supervisor, and acting physician for Red Onion State Prison. He is legally responsable for the operation of the Western region of the Va. D.O.C. healthcare services; and personally and directly acted as Chamberlain's physician at River North Correctional Center; and currently acting as Chamberlain's physician at Red Onion State Prison, in addition to the welfare of all the inmates in the Western region and Red Onion State Prison.

6.  Defendant, Doctor T. Mathena is the physician at River North Correctional Center; at 329 Dellbrook Lane Independence Virginia 24348, and is a physician employed by the Va. D.O.C., who, at all times mentioned in this complaint, acted as the cause of Chamberlain's claims and was assigned to River North Correctional Center.

7.  Each defendant is sued individually and in his official capacity, both, jointly and severally. At all times mentioned in this complaint each defendant acted under the color of state law, and with negligence, malpractice and malfeasance.

3

# III. FACTS

8. The defendant, Dr. T. Mathena (herein after Mathena), became the new physician at River North Correctional Center (RNCC) in January of 2019. Mathena is and for many years past has been a physician and surgeon duly licensed to practice in the Commonwealth of Virginia, who resides and has for many years resided in Virginia, where he has maintained his practice of his profession in the Virginia Department of Corrections.

9. On Friday, January 4, 2019; at RNCC, in Independence Virginia; Chamberlain was seen by the defendant Mathena for the renewal of Chamberlain's prescriptions for medications that Chamberlain had been taking to treat his Chronic, debilitating pain (due to extensive damage as the result of a gunshot wound); in addition to other Chronic care issues (hepatitis C, hypertension etc.); when Mathena refused to renew the expired prescription, he also made the decision to cease the other prescriptions Chamberlain was currently taking, for the treatment of his pain.

## HISTORY
## CHAMBERLAINS MEDICAL ISSUES:

10. On May 8, 2011, Chamberlain suffered a gun shot wound to his right forearm, from a .40 caliber jacketted hollow point bullet; entering

4

Just above his wrist (dorsal side), traveling up his forearm, and exiting just below his elbow (inner side); causing irreparable damage, shattering his Ulna, (Requiring a steel plate and numerous screws); in addition to the ripping and tearing of his tendons, muscles and nerves; leaving Chamberlain in a Constant and excruciating pain and suffering.

11.     Following multiple Surgeries and treatments Chamberlain's arm was "repaired" as best as possible; leaving the now Consistent medical opinion that nothing more can be done, other than to manage the pain.

12.     Over the next few years, Chamberlain's health care providers had tried and exhausted all other "formulary" medications and treatments, per the recomendations of the Virginia Department of Corrections (Va. D.O.C.) Health Services Director, and defendant Dr. Mark Amonette (Amonette). Over the course of these attempts, Chamberlain has exhibited serious adverse reactions, alergies or the treatments were simply and grosely ineffective, with absolutely no relief. This lead to the recomendation, and approval of multiple medical specialist consults and evaluations by a nerve specialist and a pain management specialist.

5

13.     In 2015, at River North Correctional Center,
Chamberlain's primary physician, Dr. J. Stevens;
began an effective treatment, in conjuction
with pushing for Chamberlain to be seen by
the above mentioned specialists (¶ 12). Dr.
Stevens had prescribed Cyclobenzaprine (Flexeril)
for the treatment of the muscle spasms in
Chamberlain's hand; (and, upon the submission for
and approval of; by defendant Amonette) Chamberlain
was given the prescription Gabapenten (Neurontinen)
for neuropathy (nerve pain). Finally, upon further
trial and error, a third prescription (was sought
and approved by defendant Amonette,) for Tramadol
(Ultram) and given to Chamberlain around the
beginning of 2016. (See Exhibit 3 P.3).

14.     In conjuction with the successful medication,
Chamberlain was still required to be seen by
specialists. The first, was a "tele-med" consult
with a nerve specialist who ordered a nerve
conductivity (ECG) procedure. On or around
November, 2016; Chamberlain went to the office
of Dr. Emily Shields, who conducted the ECG
concluding and proving the extensive nerve
damage in Chamberlain's arm, supporting the
prescription of Gabapentin for neuropathy.

15.     Upon Chamberlain's follow up with the
nerve specialist, to review the ECG results,

She recomended the addition of Pregabalin (Lyrica) to be taken with the Gabapenten, Flexeril and tramadol. However, due to Dr. Stevens' absence, the defendant Dr. Kevin Fox (Fox) Saw Chamberlain on December 18, 2017, to discuss the specialists recomedations. Fox explained that there was no medical literature to support the prescription of both Gabapenten and Pregabalin, as they are virtually the same medication, and that Chamberlin could choose one or the other. Chamberlain felt it prudent to try the medication recomended by the specialist. Based on that decision, defendant Fox ordered that Chamberlin be Weaned off of the Gabapentin and tramadol and to start the Lyrica.

16.     Shortly afterward, with the absence of the tramadol, Chamberlain began experiencing the Sharp "bone pain"; and additionally, the burning and stinging nerve pain once again. All this occuring between one (1) and three (3) weeks. At which point Chamberlain was seen by Dr. Tarpley, who promptly re prescribed the gabapenten and tramadol.

17.     However, per defendant Fox, Chamberlain's medication was changed again, and the gabapenten was switched back to Lyrica,

7

While awaiting the consult with the pain management, per the recomendation by the nerve specialist.

18.     Finally, on March 9, 2018, Chamberlain was sent to Galax to be seen by Dr. Tonya Powers, a Pain Management Specialist. In addition to a brief discussion about Chamberlain's medications, a local steroid injection was attempted, to reduce inflamation in Chamberlain's arm, which caused more pain than relief.

19.     As for the medication; on or around March 15, 2018, Chamberlain is seen by Dr. Stevens to follow up on his visit to Dr. Powers, where she had recomended Chamberlain be returned to both his original medications and dosages which were: 1200 mgs of Gabapenten twice a day; 100 mgs of tramadol twice a day; and 10 mgs Flexeril twice a day. Dr. Stevens promptly follows Dr. Powers' recomendations, and submitts the prescriptions and dosages to defendant Amonette for approval. Within a week, the prescriptions were approved and Chamberlain was recieving these medications.

20.     On or around May or June, 2018; Chamberlain was seen by his nerve specialist, and upon review, the nerve specialist recomended that

8

Chamberlain's tramadol be increased from 100mgs twice a day, to 100 mgs. 3 times a day; and to include a topical capsacin cream. Again, this was submitted to defendant Amonette for approval and again Amonette approved the prescriptions and Chamberlain began recieving the medications shortly afterward.

21. On July 6, 2018, Chamberlain was seen by Dr. Tonya Powers, where a nerve block was attempted, in his bracheal plexus. Additionally, medications were discussed, and Chamberlain conceded that the current medications and dosages made his pain tolerable; and did not need adjusting.

22. Chamberlain was and has been continually taking the above stated medications since 2015, and even in the events prior to being seen by the neurological and pain management specialists where these medications were briefly changed or suspended, they were promptly returned by the specialists, and approved by defendant Amonette.

23. Additionally Chamberlain was supposed to continue seeing the nerve and pain management specialists; as there were discussions about surgical relief options (a spinal implant), using a "tens unit" and additional attemps at nerve block injections.

9

24.       However, on or around November 2018, Chamberlain began to ask about follow up appointments with Pain management, in regard to another attempt at a nerve block. Chamberlain was then told by the RNCC medical administration that the Pain management doctor "Wasn't around any more", and that they were trying to find a new doctor or clinic.

25.       On or around December, 2018, Chamberlain was seen by Dr. Stevens one last time, as Dr. Stevens was leaving the Va. D.O.C., to pursue his private practice. Chamberlain was told that it was submitted for Chamberlain to be seen at the VCU medical center for further pain management evaluation.

## CURRENT CASE

26.       On or around late December, 2018, Chamberlain's prescription for flexeril had expired and upon a request to have it renewed, was scheduled to be seen by Dr. Stevens' replacement.

27.       Friday January 4, 2019 Chamberlain is seen by defendant Mathena, where Chamberlain is told that the current medications he is taking were not approved, and that those medications were not allowed at the other facilities Mathena previously worked at; and "the only medication" Mathena "will prescribe" are: amytryptaline,

10

nortryptaline, and Cymbalta; Outside that, Chamberlain will not recieve anything else". Chamberlain tried to explain to Mathena that those medications had already been tried and that it is documented in Chamberlain's medical records that both amytryptaline and nortryptaline had adverse side effects: urine retention, hypertension and tachycardia, and other complications. Additionally, Cymbalta caused stiff muscles, severe abdominal pain, dark urine and overheating.

28.  Again, Chamberlain instructed Mathena to examine his medical records, and for the above stated reasons, that is why Chamberlain was approved for the specialists care, non-formulary medications and treatments. Mathena refused to listen and remained deliberately indifferent to Chamberlain's pleas.

29.  Chamberlain then asked Mathena if he was going to be "Weaned" off the gabapentin and tramadol; as Chamberlain had been taking these medications for over three (3) years. (Please Note: Gabapenten is a siezure medication and express warnings dictate this medication is not to be stopped suddenly; Additionally, Tramadol is a Schedule IV and has been shown to develop physical dependence) at high doses.

11

It should also be noted, defendant Fox exercised the standard of medical care in ¶ 15 when he weaned Chamberlain off both the Gabapenten and tramadol, to simply switch medications; unlike Martling, who, with deliberate indifference, and/or negligence, abruptly ceases Chamberlain's medication stating: "The State did not require weaning". Chamberlain's medication was stopped that night.

30.     The following day, Saturday January 5, 2019 Chamberlin began experiencing withdrawl symptoms which began to worsen exponentially. By Sunday January 6, 2019; Chamberlain is vomiting, and suffering constant diareha, muscle spasms, convulsions, cramps, insomnia, cold chills, sweats, and on top of that, suffering an exagerated level of the constant and excruciating pain that the absent medication used to make tolerable, and were treating.

31.     After a little over a week, Chamberlain was finally able to leave his bed and cell, to aquire the paper work to begin filing his complaints against these issues.

32.     On January 11, 2019, Chamberlain filed two(2) "informal" Complaints, beginning his grievance process, (Administrative Remedies): One, to initiate a medical review

12

by Mathena's Supervisor in order to attempt the return of the effective treatment via the medications that Mathena stopped; and Two: to exhaust his administrative remedies in order to pursue legal action for the unnecessary and malicious infliction of suffering and emotional distress due to the forced withdrawal Chamberlain endured as a direct result of Mathena acting contrary to the medical standards of care by refusing to taper Chamberlain off of the pain medications he had been taking at high dosages for an extended period of time of or around three (3) years. Also note, in addition to this distress, there is again the issue of Chamberlain's excruciating and debilitating pain from his injuries, Overwhelming and unimpeded, as the only effective medication which made this pain tolerable, was so abruptly removed.

33. The medical administrator Lisa Parks answers Chamberlain's Complaints, in an attempt to defend Mathena's actions by claiming Chamberlain had new tattoos. However this does not give any consideration to the deep internal pain around the steel plate and screws, and missing bone; nor does this negate or justify Mathena not "weaning" or "Tapering" Chamberlain down from the high dosages and extended time frame that Chamberlain had been taking these medications, which were abruptly stopped.

34. Lisa Parks also tried to assert that Mathena

Offered "alternative" medications and treatments; however Lisa Parks hides the fact that the alternatives were the same ineffective treatments with documented adverse reactions in Chamberlin's medical records.

35.     As Chamberlin proceeded in his appeals to his Complaints, he is repetitiously told to re-submit for "sick-call" for re-evaluation. Chamberlin pointed out that: Mathena made it abundantly clear that the only treatments (medications) he would prescribe were the ineffective, and previously exhausted formulary medications that did more harm than good, regardless of Chamberlin's records, or specialists recomendations.

36.     Chamberlin, while still under Mathena's care, was denied any further access to both the nerve specialist and his pain management specialist, and has been suffering constant and excruciating pain; in addition to this physical anguish, and no quality of life, Chamberlin suffers extreme emotional distress.

37.     In addition to the exhaustion of the prison grievances filed, Chamberlin had filed a "Notice of Claim" pursuant to Virginia Code § 8.01-195.1; and while awaiting the exhaustion of these remedies, Chamberlin was transferred to Red Onion State Prison, where defendant Fox is now Chamberlin's sole health care provider.

38.     Chamberlin again stated all the above facts to Fox, and is told that he would not be given

any of his previous medications; and that he would not be seen by either nerve specialist or pain management. Once again, clearly stating that the only treatments or medications that will be given are as previously stated, ineffective and/or causing adverse reactions. Additionally refusing any further evaluations and/or care by specialists, which Chamberlain's condition obviously warranted.

## IN CONCLUSION

39.    Chamberlain's condition and medical records clearly warranted special care as 1) after the exhaustion of all other formulary treatments and medications; he was prescribed the non-formulary medications: Gabapenten, and Tramadol; which was approved by defendant Amonette. 2) Chamberlain was approved to be evaluated and treated by both nerve and pain management specialists. (approved by Amonette) where these specialists supported and endorsed the medications Chamberlain was taking (again approved by Amonette). Finally, 3) Chamberlain had been taking these medications for a period of three (3) years, all under the approval of Amonette. Suddenly, Matthena acting contrary to not only Chamberlain's general physicians Dr.s Stevens and Tarpley; but also specialists, (in their respective fields) of Neurology and Pain management (Chamberlain's nerve specialist a VCU) and Dr. Tonya Powers (pain management);

and finally, Amonette, who ultimately approved all of the above actions, consults medications and treatments. In short, four seperate doctors, (two of which are specialists) all agreed Chamberlain suffered significant pain which warranted the medication and other treatments Chamberlain was recieving; all under the concurred approval of Amonette, five (5) doctors in total; (which is more than just mere difference in medical opinion) When Mathena not only decides to stop all medications, but ceases all specialist intervention as well, for no medically sound reason; and to add insult to injury, forced Chamberlain to suffer pain and indignity, by refusing to taper him off the medications Chamberlain had become physically dependant on.

40.     As a direct and proximate result of defendant Mathena's malice, gross negligence, negligence, deliberate indifference, and intentional infliction of emotional distress, due to: medical malpractice, careless acts and again deliberate indifference to a serious medical need; Chamberlain has been caused to suffer and will in the future continue to suffer great physical pain and mental anguish; has been permanently disabled, has been and will in the future be prevented from transacting his business and has incurred and will continue to incur medical expenses in an effort to

16

to be cured/treated for his condition.

41.     With regard to defendant Fox, he maintains his refusal to prescribe other medications outside the ineffective, or harmful medications previously tried, and adamantly refuses to allow Chamberlain to be seen by any specialists, while Chamberlain is at Red Onion State Prison.

42.     Defendant Amonette refuses to intervene in any way.

## IV. EXHAUSTION OF LEGAL REMEDIES

43.     Chamberlain used the prisoner grievance procedure available per the Virginia Department of Corrections in an attempt to resolve these issues; in addition to a Notice of Claim per Va. Code § 8.01-195.6 . On January 11, 2019 Chamberlain filed his informal complaint, and appealed these complaints to the highest available level; Please See Exhibits 1A and 1B. On March 12, 2019 Chamberlain filed a Notice of Claim to both the Attorney General and the Division of Risk Management by way of Certified Mail; See Exhibit 2.

## V. LEGAL CLAIMS

44.     Chamberlain realleges and incorporates by reference paragraphs 1 – 43.

45.    The Deliberate Indifference to Chamberlin's serious medical needs, medical Malpractice, Intentional Enfliction of Emotional Distress and Violation of Chamberlin's Equal Protection rights all constitute violations to the 8th and 14th Amendments to the U.S Constitution; in addition to the Americans with Disabilities Act per ~~TITLE A~~ 42 USCA § 12101 et. seq.

46.    Chamberlin clearly establishes a serious medical need by explaining the extensive damage as a result of a gunshot wound and the pain resulting from such, which can easily be understood by a lay men. Additionally, Chamberlin exceeds the Standard of a serious medical need by showing the need and evaluation ~~by~~ of both a nerve specialist and a pain management specialist, in addition to the extraordinary treatments by his general Physicians; See Exibit 3, Page 6.

47.    Chamberlin Shows that deliberate Indifference Standard occurred when 1) defendant Mathena acts in opposition to not only Chamberlin's medical records, but also contrary to two general practitioners and two specialists; by ceasing an effective treatment, and then refusing to deviate from the previously rendered grossly ineffective course of action and medication which had serious adverse reactions, and 2) By refusing to taper or "wean" Chamberlin off of the Gabapentin and Tramadol, causing painful withdrawals, among other Problems; a blatant disregard for the Standards of

medical care per the: National Guideline Clearinghouse @ www.guideline.gov, giving rise to tortious injury and medical malpractice.

48.     This Deliberate Indifference has carried over to defendant Fox at Red Onion State prison, as the above stated and established serious medical need is still being denied adequate treatment and relief. As Fox has refused to entertain any alternative to the aforementioned ineffective and harmful medications and blatant denial of access to neuro and pain management specialists.

49.     This Constitutes discrimination, violating my Equal Protection under the law per the 14th Amendment because other people under the Va. D.O.C. policy enjoy more adequate medical care, especially pain management. Chamberlain is being denied effective pain medication and treatments simply because of his location. Other D.O.C. inmates are prescribed medications such as morphine, hydrocodone etc. for Cancer, or other maladies; or only "diabetic" neuropathy can be treated with gabapentin. Chamberlain asks: How can pain be differentiated? How can you justify allowing only diabetics to recieve gabapentin? Neuropathy is the same afflicting pain whether caused by diabetes or a bullet severing a median nerve. Please see ECG results construed in Exhibit 3. Finally, Chamberlain points out that he has already been sent to Outside specialists,

Any where else, Chamberlin would not be forced to endure the Suffering and indignity at the hands of the Sadistic defendants, Simply for the excuses of: "Security" or "Costs".

50.      Chamberlin has no plain, adequate or Complete remedy at law to redress the wrongs described herein. Chamberlin has been and will continue to be irreparably injured by the conduct of the defendants unless this Honorable Court grants the declaratory and Injunctive relief being Sought.

51.      Chamberlin, in addition to the Constant and excruciating pain, no quality of life and inability to function, is in fact disabled. As stated, the gunshot wound has rendered Chamberlin's arm and hand Useless.

## VI. PRAYER FOR RELIEF

WHEREFORE, Chamberlin prays that this Honorable Court enter judgment granting him:

52.      A declaration that the acts and omissions described herein violated Chamberlin's rights under the Constitution and laws of the United States.

53.      A preliminary and permanent injunction ordering the defendants to return Chamberlin to the care and Supervision of the nerve specialists and the Pain management Specialists and to further Stop delaying, hindering, impeding and/or denying

any and all treatments, including but not limited to
medications, surgery, or other procedures to alleviate
Chamberlain's Pain and Suffering.

54.      Compensatory damages in the amount of
$60,000.00 against each defendant, Jointly and Severally.

55.      Punitive damages in the amount of $90,000.00
against each defendant, Jointly and severally.

56.      A jury trial on all issues triable by Jury.

57.      Chamberlain's Costs in this Suit,

58.      Any additional relief this Honorable Court deems
equitable and Just

Dated: 12-19-19

Respectfully Submitted,

Jeramiah Chamberlin
Va. State # 1084343
10800 H. Jack Rose Highway
(Post Office Box 970)
Pound, Virginia 24279
Phone: (540) 769-7510

VERIFICATION

I have read the foregoing Complaint and hereby verify
that all matters, information and claims are in fact true,
I certify under penalty of perjury that the foregoing is true
and correct. Executed at Pound Virginia on

Date: 12-19-19         Signed: 
                                Jeramiah Chamberlin

21

Legal
Mail

Jeramiah Chamberlain #1087343
Red Onion State Prison
P.O. Box 970
Pound, Va. 24279

RECEIVED
DEC 23 2019
MAIL ROOM

The Hon. Julia C. Dudley, Clerk
U.S. District Court
210 Franklin Rd. (suite 540)
Roanoke, Va. 24006