IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEREMIAH CHAMBERLAIN, | ) | |
|     Plaintiff, | ) | Civil Case No. 7:19-cv-00879 |
| v. | ) | |
| | ) | |
| DR. T. MATHENA, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

    Jeremiah Chamberlain, a Virginia inmate proceeding *pro se*, brought this civil rights action naming three defendants: Dr. T. Mathena, Dr. Kevin Fox, and Dr. Mark Amonette. The claims in his amended complaint arise from allegations that he has been denied adequate medical treatment by defendants while incarcerated. His claims against Drs. Mathena and Fox focus on allegations that they either changed or refused to provide his preferred prescription medications for pain. His claims against Dr. Amonette stem from Dr. Amonette's alleged "refus[al] to intervene," despite his knowledge of Chamberlain's past medical history and his prior approval of Chamberlain's medications. He also points to Dr. Amonette's general role as a supervisory employee, which Chamberlain alleges makes him responsible for all medical services provided in VDOC facilities.

    Pending before the court are two separate motions to dismiss. The first was brought by Drs. Mathena and Fox; the second by Dr. Amonette. The motions are fully briefed and ripe for disposition. For the reasons set forth in this opinion, the court will grant in part and deny in part the motion of Drs. Mathena and Fox and will grant the motion by Dr. Amonette.

I. BACKGROUND

**A.**    **Factual Background**

    Chamberlain identifies Dr. Fox as the regional health services supervisor and acting

physician for Red Onion State Prison (Red Onion). He treated Chamberlain both at River North Correctional Center (River North) and at Red Onion. Dr. Mathena, also a physician, treated Chamberlain at River North. Dr. Amonette, the Director of health services for the Virginia Department of Corrections (VDOC), never treated Chamberlain, but Chamberlain alleges that he is "legally responsible for the overall operation of VDOC's health services," including services provided at River North and Red Onion. He also alleges that Dr. Amonette repeatedly "approved" prescriptions for years that were requested by Chamberlain's treating physicians and by outside specialists.

Chamberlain suffers from chronic pain as the result of suffering a gunshot wound to his right forearm in May 2011, which required various surgeries to "repair" it as best as possible. (Compl. ¶¶ 4, 10.) Chamberlain alleges that he continues to suffer from "constant and excruciating pain and suffering" that must be managed with medication. (*Id.* ¶ 10.) He explains that over the years, VDOC physicians tried several medications and treatments, but they either provided Chamberlain with no relief or he experienced serious adverse reactions to the medications. He alleges that he had received "multiple medical specialist consults and evaluations" by both a nerve specialist and a pain management specialist.

In 2015, Chamberlain alleges that his VDOC physician, Dr. Stevens, "began an effective treatment" that consisted of cyclobenzaprine (Flexeril) and, upon approval by Amonette, the prescription gabapentin (Neurontin) for pain, and later the prescription tramadol (Ultram) was added. (*Id.* ¶ 13.) Later, an outside nerve specialist also recommended the addition of pregabalin (Lyrica) to be taken with the other three medications.

On December 18, 2017, Chamberlain was treated by Dr. Fox to discuss the specialist's recommendation. Fox explained to Chamberlain "that there was no medical literature to support

2

the prescription of both gabapentin and pregabalin, as they are virtually the same medication," and that Chamberlain could use one or the other.  Chamberlain elected to try the Lyrica, and so Dr. Fox ordered that Chamberlain be weaned off the gabapentin and tramadol and to start Lyrica.  This was not effective for Chamberlain, however, and he began to experience significant pain as a result of the stopping of the tramadol.  Within weeks, Chamberlain was seen by Dr. Tarpley, who re-prescribed the original two medicines.  At some unspecified point, however, Fox changed Chamberlain's medicine again, and the gabapentin was switched back to Lyrica.  (Compl. ¶¶ 15–17.)  In March 2018, Dr. Stevens returned Chamberlain to his original medications and added Flexeril, resulting in prescriptions for 1200 mg of gabapentin, twice a day, 100 mg of Tramadol twice a day, and 10 mg of Flexeril twice a day.  Those prescriptions were approved by Amonette.

In November 2018, Chamberlain sought continued follow-up with the nerve and pain management specialists, noting other possibilities had been discussed, such as surgical relief options, using a "tens unit," and additional nerve block injections.  He was told, however, that the pain management doctor "wasn't around anymore" and that River North was trying to find a new doctor or clinic.  Dr. Stevens left VDOC in December 2018, but Chamberlain was told that a request had been submitted for him to be seen at the VCU medical center for further pain management evaluation.

In late December 2018, Chamberlain was scheduled to be seen by Dr. Stevens's replacement because his prescription for Flexeril had expired.  On January 4, 2019, Chamberlain was seen by Dr. Mathena, who told him that the medications he was taking were not approved and were not allowed at other VDOC facilities.  Dr. Mathena offered him different medications, but Chamberlain told Dr. Mathena they were not effective and refused to take the alternative medicines.  Rather than ordering that Chamberlain be "weaned" or tapered off of his current

medications, however, Dr. Mathena ordered that the medications he had been taking be stopped immediately. Chamberlain argues that he should have been weaned off of both the gabapentin and the tramadol and that, because he was not, he experienced significant withdrawal symptoms for approximately one week, including vomiting, constant diarrhea, muscle spasms, convulsions, cramps, insomnia, cold chills, and excruciating pain. He claims that Dr. Mathena also denied him "further access" to both the nerve specialist and his pain management specialist. (*Id.* ¶¶ 26–31, 36.)

At some unspecified point, Chamberlain was transferred to Red Onion where Dr. Fox became his treating physician. According to Chamberlain, Dr. Fox told him that he would not be given any of his previous medications and would not be seen by either a nerve or pain management specialist. (*Id.* ¶ 38.)

With regard to the "effective" treatment he received, Chamberlain alleges that Dr. Amonette repeatedly approved those medications. He does not allege that Dr. Amonette was aware of any later change in his medications or the denial of any outside treatment, but he simply states that Dr. Amonette "refuses to intervene in any way." (*Id.* ¶ 42.)

**B.     Chamberlain's Claims**

In its introduction, Chamberlain's complaint asserts that he is bringing an Eighth Amendment claim under 42 U.S.C. § 1983. He also asks the court to exercise supplemental jurisdiction over claims brought pursuant to the Virginia Tort Claims Act ("VTCA") and Virginia Code §§ 8.01-195.1, and he refers to a medical malpractice claim. Lastly, he asserts a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Later, in a section where he specifically lists his legal claims, he references the following claims: (1) an Eighth Amendment claim (presumably brought pursuant to § 1983); (2) medical malpractice; (3)

4

intentional infliction of emotional distress; (4) an Equal Protection claim (also pursuant to § 1983); and (5) an ADA claim. Thus, the court construes his complaint as asserting those five claims against all three defendants.[1] His complaint states that it seeks preliminary and permanent injunctive relief, declaratory relief, and compensatory and punitive damages.

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

Although filed in two different motions, all defendants argue that all claims against them should be dismissed, and their motions raise many of the same grounds. The court will therefore discuss the two motions jointly.

---

[1] In a paragraph where he discusses Dr. Mathena's conduct, he characterizes that conduct as "gross negligence," deliberate indifference, malice, and negligence. (Compl. ¶ 40.) Chamberlain does not include "gross negligence" in his specific list of claims, however, and the court does not interpret his complaint as asserting a separate "gross negligence" claim against Dr. Mathena or the other defendants.

### B. Eighth Amendment Claim

#### 1. Applicable Law

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of an objectively serious medical need and disregarded that need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). To qualify as deliberate indifference, the defendant's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

#### 2. Eighth Amendment Claim Against Drs. Fox and Mathena

Drs. Fox and Mathena argue that plaintiff's Eighth Amendment claims against them are subject to dismissal because "[t]he Complaint and attachments make clear they considered [Chamberlain's] gunshot wound, the resulting claimed pain, and proposed reasoned, medically appropriate care for his injury." (Mem. Supp. Mot. Dismiss 4, Dkt. No. 21.) They further assert

in summary fashion, without citing to anything, that any pain or withdrawal symptoms that resulted were caused by plaintiff's decision not to take the recommended pain medications, not the medical decision to change those medicines. (*Id.* at 4, 11.)

The court cannot agree that plaintiff has failed to state an Eighth Amendment claim against either physician. Much of the rationale set forth in defendants' memorandum as underlying the medical decisions may well be accurate. But that information is not in the complaint (or conflicts with the complaint), nor is it supported by any affidavits from anyone, such that the court could consider it under Rule 56. Instead, the court is limited to a review of the allegations in the complaint and the documents attached to the pleading. While Chamberlain admits that he refused to take the different medications defendants proposed, he also alleges (and alleges he told defendants) that those other medicines had previously been tried and been unhelpful or harmful to him, and he alleges that fact is supported by his medical records, to which they had access.

He further alleges that both Dr. Fox and Dr. Mathena deprived him of the opportunity to have continued consults with nerve and pain specialists, even though Dr. Stevens had concluded that those consults were necessary and appropriate. He also notes that specialists had recommended certain medications that his physicians failed to follow. As defendants note, a prison physician need not follow a specialist's recommendations, and mere disagreements among physicians or between a prisoner and his physician do not equate to deliberate indifference. *Hogge v. Stephens*, No. 3:09CV582, 2010 WL 3834856, at *6 (E.D. Va. Sept. 24, 2010) ("A mere disagreement between doctors does not establish that one doctor was deliberately indifferent."), *aff'd,* 469 F. App'x 160 (4th Cir. 2012); *Ballard v. Daniels*, No. 5:16-CT-3012-BO, 2017 WL 1283670, at *4–5 (E.D.N.C. Jan. 13, 2017) ("A prison physician is not

7

constitutionally required to follow a specialist's recommendations."), *report and recommendation adopted,* No. 5:16-CT-3012-BO, 2017 WL 945850 (E.D.N.C. Mar. 10, 2017). Nonetheless, when considered in conjunction with the other facts alleged by Chamberlain, these facts further support a plausible claim of deliberate indifference.

Both Dr. Mathena and Dr. Fox may well have had sound medical reasons for their decisions concerning Chamberlain's medications, despite his assertions of past ineffectiveness or negative reactions. They also may have determined that he no longer needed to see specialists for valid reasons. And perhaps it is correct that tapering Chamberlain off the medications (as Dr. Fox did in 2017, but Dr. Mathena allegedly failed to do in January 2019) was not necessary. But the reasons for all of these treatment decisions are not part of the record, so there is no indication that those decisions were, in fact, the result of a reasoned medical judgment. Also, Chamberlain alleges that tapering (or "weaning") was required for the gabapentin, and as to causation, there is nothing in the complaint or attachments that states his withdrawal symptoms would not have occurred had he taken the alternative medicine. The court cannot consider defendants' unsworn statements as to causation in their supporting memorandum, which contradict the allegations in the complaint, in addressing a Rule 12(b)(6) motion.

These issues may be appropriately resolved on a more complete summary judgment record, without the need for trial. *E.g.*, *Pevia v Pierce*, No. ELH-18-1553, 2019 WL 2329845, at *10–11 (D. Md. May 31, 2019) (granting summary judgment on similar claims where affidavits from the physicians disclosed their reasons for declining to renew certain medications, substituting others, or not tapering a particular medicine); *Branham v. Meyer*, No. 4:19-CV-0279-HMH-TER, 2019 WL 7195633, at *5–6 (D.S.C. Oct. 7, 2019) (same), *report and recommendation adopted,* No. CV41900279HMHTER, 2019 WL 5884301 (D.S.C. Nov. 12,

2019), *aff'd,* 813 F. App'x 114 (4th Cir. 2020). But at this stage of the case, Chamberlain has alleged sufficient facts to allow his Eighth Amendment claims to proceed against Drs. Mathena and Fox.

### 3. Eighth Amendment Claim Against Dr. Amonette

Turning to the claim against Dr. Amonette, it is clear that Dr. Amonette's participation in Chamberlain's treatment was less direct because he was not Chamberlain's treating physician. Dr. Amonette argues that the Eighth Amendment claim against him is subject to dismissal because there are insufficient facts alleged to show that Dr. Amonette was subjectively deliberately indifferent. He states that a mere failure to intervene in the changed treatment decisions "is not an indication of deliberate indifference." (Mem. Supp. Mot. Dismiss 4, Dkt. No. 24.) He argues that for his refusal "[t]o constitute deliberate indifference . . . he would have to disagree with the treatment decisions and decide to . . . .not intervene despite a knowledge of the pain and risk imposed on the Plaintiff." The lack of intervention, however, "could just as easily reflect Defendant Amonette's agreement with the treatment change." (*Id.*) The court agrees that Chamberlain has failed to allege sufficient facts to show that Dr. Amonette was deliberately indifferent.

Although Dr. Amonette was involved in approving prior treatment for Chamberlain, the complaint does not allege that he knew that Dr. Fox or Dr. Mathena had changed (or recommended changing) Chamberlain's treatment. Nor does it allege any facts to support that Dr. Amonette subjectively believed that the changed treatment would pose a serious risk of harm to Chamberlain. And unlike Dr. Mathena, with whom Chamberlain shared his belief that the other treatments would not be effective and that he should be tapered off his current medications, Chamberlain does not allege that he ever raised those issues to Dr. Amonette or that he was

9

otherwise aware of them. Notably, he does not allege that Dr. Amonette had any knowledge of the switch in medications or lack of tapering before Chamberlain experienced pain or withdrawal symptoms as a result. Further, he alleges no facts to support any finding that Dr. Amonette subjectively believed any newly proposed treatment would pose a risk of harm to Chamberlain. Accordingly, the Eighth Amendment claim against Dr. Amonette is subject to dismissal. If Chamberlain believes he can remedy these deficiencies, he will be permitted to file an amended complaint not later than thirty days after entry of the accompanying order, but must add specific additional allegations against Dr. Amonette concerning his changed treatment in any amended complaint filed.

To the extent Chamberlain is trying to impose liability against Amonette simply because he was the supervisor of Drs. Fox and Mathena, such a claim fails. To establish supervisory liability, Chamberlain must allege facts sufficient to show that the defendant (1) "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Chamberlain has not alleged sufficient facts to meet this standard.

## C. Other Claims

There are a number of other arguments defendants offer in support of dismissal. For example, defendants correctly note that Chamberlain's claims for monetary damages against them in their official capacities (at least as to the § 1983 claims) are barred by sovereign

immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such claims will be dismissed. The court briefly addresses the remaining claims, which are: (1) Virginia Tort Claims Act/medical malpractice claims; (2) § 1983 claims alleging an equal protection violation; (3) ADA claims; and (4) intentional infliction of emotional distress claims.

1. **VTCA/Medical Malpractice Claims**

Claims under the Virginia Tort Claims Act against these individual defendants fail for a number of reasons. Most fundamentally, Virginia's state courts have exclusive jurisdiction to hear VTCA claims. Va. Code § 8.01-195.4. Furthermore, the plain language of the VTCA allows negligence claims to be maintained only against the Commonwealth, not against individual state officers. Thus, those claims must be dismissed without prejudice.[2]

2. **Equal Protection Claims**

Second, defendants are correct that Chamberlain's equal protection claim fails as a matter of law. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause thus directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982).

To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)).

---

[2] Any medical malpractice claim against defendants fails for the additional reason that Chamberlain does not allege that he obtained the expert certification required in Virginia for such claims. *See Zupko v. United States*, No. 3:18CV493, 2020 WL 6064955, at *14 (E.D. Va. Oct. 14, 2020) (discussing the certification requirement, noting that claims excepted from the requirement are rare, and dismissing claim of prisoner who failed to obtain a certificate prior to filing suit), *aff'd* No. 20-2157, 2021 WL 733030 (4th Cir. Feb. 25, 2021); *James v. United States*, 143 F. Supp. 3d 392, 396–97 (E.D. Va. 2015) (dismissing claim that physician failed to comply with the standard of care in diagnosing and prescribing medications for plaintiff's condition because of plaintiff's failure to satisfy certification requirement).

11

Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). Once such a showing is made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney*, 293 F.3d at 731 (quoting *Morrison*, 239 F.3d at 654).

Chamberlain has failed to identify a group of persons to which he belongs, nor has he identified any similarly situated persons (or group of persons) who were treated differently. In short, he fails to allege facts sufficient to plausibly state an equal protection claim under the Fourteenth Amendment. Any such claim must be dismissed.

### 3. ADA Claims

Third, Chamberlain's allegations fail to state a valid claim under the ADA and must be dismissed.[3] Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A state prison is a "public entity" within the meaning of the ADA, and, as such, Title II of the ADA is applicable to state prisons. *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 154 (2006).

To prevail on his claim under Title II of the Americans with Disabilities Act, Chamberlain must allege that: "(1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program or activity; and (3) he was excluded from participation in or

---

[3] Defendants argue that no ADA claims can be brought against individual defendants, citing to an employment case. But the Fourth Circuit has recognized that although the ADA does not authorize suits for monetary damages against defendants in their individual capacities, *Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014), individual defendants can be sued in their official capacities under Title II of the ADA because Congress abrogated Eleventh Amendment immunity in that statute. *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020).

denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability." *Spencer v. Early*, 278 F. App'x 254, 261 (4th Cir. 2008) (quotation omitted).

Chamberlain fails to identify any specific program or activity that he has been excluded from, as necessary to state a claim under Title II of the ADA. Instead, it appears that he is relying on the same allegations set forth in his original complaint that underlie his Eighth Amendment claim. It is well established, however, that an inmate's medical treatment, or lack of treatment, does not provide a basis upon which to impose liability under the ADA. *See Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996); *see also Spencer v. Easter,* 109 F. App'x 571, 573 (4th Cir. 2004). Because his complaint fails to adequately allege facts to state a claim, his ADA claims will be dismissed without prejudice.

### 4. Intentional Infliction of Emotional Distress Claims

Fourth and finally, Chamberlain asserts state-law claims for intentional infliction of emotional distress (IIED), but such claims are disfavored under Virginia law. *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir. 2001). Moreover, the conduct sufficient to support such a claim must be both "intentional or reckless" and "outrageous and intolerable." *Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013) (citing *Russo v. White*, 241 Va. 23, 400 S.E.2d 160, 162 (1991)). The type of outrageous and intolerable conduct required "is seldom met by plaintiffs under Virginia law." *Facchetti v. Bridgewater College*, 175 F. Supp. 3d 627, 645 (W.D. Va. 2016) (citation omitted). Although the court thinks it is unlikely that Chamberlain's IIED claims would survive a summary judgment motion, the court will allow the claims against Drs. Fox and Mathena to proceed at this time. *Cf. Griffin v. Mortier*, No. 19-

7171, 2020 WL 7023895, at *5 (4th Cir. 2020) (holding that the district court improperly dismissed a North Carolina IIED claim against a prison nurse where the plaintiff alleged that he had suffered a seizure and a head injury, and the nurse failed to provide any examination or treatment to him).

As to defendant Amonette, the court already has concluded that the facts alleged do not show deliberate indifference on his part. For like reasons, the court also concludes that his conduct of "refusing to intervene" in treatment decisions that he may not have known about and may have agreed with, is not the type of outrageous and intolerable conduct required to state a claim. Accordingly, the IIED claim against him will be dismissed.

### 5. Other Grounds

Defendants also move for dismissal on the grounds of qualified immunity, but the court declines to address qualified immunity at this time. The onus is on a defendant asserting qualified immunity to put forth authorities and argument showing that he is entitled to it. "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). Drs. Fox and Mathena have not met his burden.

To show an entitlement to qualified immunity, a defendant must show either that there was no violation of a constitutional right or that the right was not "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). As the court already has discussed, the facts in the complaint are sufficient to state a plausible claim of a constitutional violation. Moreover, a reasonable officer would have known in 2018 and 2019 that denying an inmate adequate medical treatment or medication for a serious

medical need would be unlawful. *See, e.g.*, *Miltier*, 896 F.2d at 851. Accordingly, the court will deny the motion to insofar as it seeks dismissal on the basis of qualified immunity.

Instead, the court will direct Drs. Fox and Mathena to file a motion for summary judgment addressing the merits of plaintiff's Eighth Amendment claims, and they may choose to renew their motion seeking dismissal on the grounds of qualified immunity, as well. The court also declines to dismiss plaintiff's claim for punitive damages at this time because those claims are better addressed at summary judgment. Thus, defendants' motion will be denied as to those specific grounds for dismissal.[4]

### III. CONCLUSION

For the reasons discussed above, the motion to dismiss by Dr. Amonette will be granted in its entirety. The motion to dismiss by Drs. Fox and Mathena will be granted in part and denied in part. Specifically, all claims except the § 1983 claim alleging an Eighth Amendment violation, the intentional infliction of emotional distress claim, and any claim for punitive damages will remain in the case. All other claims, as well as the § 1983 claims against defendants in their official capacities seeking money damages, will be dismissed. An appropriate order will be entered.

Entered: March 1, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[4] Defendants also argue that any request for preliminary injunctive relief "fails as a matter of law," but despite plaintiff's reference to such relief in his complaint, plaintiff has not separately sought such relief in a motion or otherwise. Accordingly, that issue is not before the court at this time.